IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

KEANE M. KEHOE,

   Plaintiff,

  vs.        Case No. 12 CV 1091

TOYOTA MOTOR SALES, U.S.A., INC.,  Removed from Milwaukee County
            Circuit Court: 12 CV 10770
    Defendant.

## DEFENDANT'S, TOYOTA MOTOR SALES, U.S.A., INC., PRETRIAL REPORT

   Defendant, TOYOTA MOTOR SALES, U.S.A., INC. ("TMS"), files its Pretrial Report

pursuant to Civil L. R. 16 (b) and (c) for the upcoming September 10, 2014, final pretrial

conference and September 29, 2014, jury trial:

### A. DEFENDANT'S SUMMARY OF FACTS, CLAIMS AND DEFENSES

  Plaintiff's Complaint alleging breach of warranty claims is brought under the Federal

Magnuson-Moss Warranty Act. 15 U.S.C. §§ 2301-2310 (West 2014). Plaintiff contends that

TMS breached its written and implied warranty with regard to his 2009 Lexus LS460 and that he

is entitled to recover damages as a result of this breach.

  On August 15, 2009, Plaintiff purchased a new 2009 Lexus LS460L from Lexus of

Madison for approximately $80,000. In 2011, approximately two years after the purchase,

Plaintiff contends that he experienced suspension noises emitting from the vehicle when he

drove over uneven road surfaces. Between December of 2011 and May of 2012, the Plaintiff

presented his vehicle to Lexus of Brookfield on six occasions and made complaints about these

suspension noises. Lexus of Brookfield performed servicing to the subject vehicle, including the

replacement of various suspension parts (struts, an air shock assembly, and control arms) in order to address the suspension noise. Plaintiff was not satisfied with the remedial measures and continued to claim that the vehicle made a slight tapping noise when going 5 mph over rough surfaces.

Approximately a year after the last repairs were performed by Lexus of Brookfield, Plaintiff returned to Lexus of Brookfield in May of 2013, and once again complained about noises coming from the suspension. However, an inspection revealed no abnormal noises, problems, or defects with the suspension.

After Plaintiff filed suit against TMS, Plaintiff disclosed James Dentici as an expert witness to offer mechanical and valuation opinions at trial. Mr. Dentici authored two reports in this case (August 1, 2013, and October 13, 2013) in connection with his inspections of the subject vehicle. Mr. Dentici claims that the suspension of the Lexus LS460L remains defective and that the vehicle has been diminished in value by $40,000.

TMS disclosed two automotive technical experts during the course of discovery: (1) Michael Zarnecki (an ASE Master Automotive Technician) who is employed as a Field Technical Specialist for TMS, and (2) Greg Webster (an engineer) who is employed as a Technical Analysis Manager for TMS. Mr. Zarnecki and Mr. Webster inspected and road tested the subject vehicle in September of 2013 and February of 2014. There were no abnormal noises emitting from the vehicle's suspension during the road tests. In addition, they did not find any defects in material or workmanship with the Lexus's suspension components, or any problems with the performance of the suspension.

TMS also disclosed Randy Enochs as an automotive valuation expert. Mr. Enochs inspected the vehicle in February of 2014, and he found that the Lexus was in excellent condition and did not suffer any diminution in value at the time of sale or the time of his inspection.

Plaintiff claims that the suspension on the LS460L remains defective and that TMS was unable to repair the alleged suspension defects after being given a reasonable number of repair attempts and a reasonable amount of time. Plaintiff was never charged for any repairs or inspections that were performed on the subject vehicle, as the repairs were paid under TMS's limited written warranty. TMS denies that it breached its written or implied warranty and denies that the Plaintiff has sustained any damages.

## B. <u>STATEMENT OF ISSUES</u>

(1) As conceded by Plaintiff in his Response to Defendant's Motion *in Limine*, the jury will only consider whether TMS failed to repair the alleged defects with the suspension of the subject 2009 Lexus LS 460L, and will not consider whether any other previous warranty repairs to the vehicle were successfully performed.

(2) The measure of damages for breach of warranty under the Act in Wisconsin is the difference, if any, at the time and place of acceptance, between the value of the vehicle if it had been as warranted and the value of the vehicle with the defect or malfunction. *Mayberry v. Volkswagen of America, Inc.*; 278 Wis. 2d 39, 692 N.W. 2d 226; W.S.A. 402.714(2)). 15 U.S.C.A. § 2310(d)(1)(A), 2311(b)(1)). Diminishment in value is the only appropriate measure of damages. *Lamont v. Winnebago Industries, Inc.*, 569 F. Supp. 2d 806 (E.D. Wis., 2008); 15 U.S.C. §2304(a)(4); *Schimmer v. Jaguar Cars, Inc.*, 384 F. 3d 402, 405 (7th Cir. 2004). *See also Miller v. Four Winds Intern Corp.*, 827 F. Supp. 2d 1175 (Dist. of Idaho, 2011), (explaining that

refunds are not available for breach of limited written warranties under the Magnuson-Moss Act and that damages are available as prescribed by state law).

(3) In order to prevail on a claim under the Magnuson-Moss Warranty Act, the Plaintiff has the burden of establishing, by a preponderance of the evidence, five separate elements: (1) the Plaintiff complied with the terms of the warranty; (2) the 2009 Lexus LS 460L contained a defect covered by the warranty; (3) TMS was given a reasonable opportunity to perform the necessary repairs; (4) TMS was unable to repair the defect within a reasonable time or after a reasonable number of repair attempts; and (5) the Plaintiff sustained damages under the applicable measure of damages. 15 U.S.C.A. § 2301, 2310(d)(1)(A) and (B), 2311(b)(1)(C), 2310(3) and 2311(b)(1)); W.S.A. 402.714(2); *Mayberry v. Volkswagen of America, Inc.*, 278 Wis. 2d 39, 692 N.W. 2d 226; *Pearson v. DaimlerChrysler Corp*., 349 Ill.App.3d 688, 813 N.E.2d 230 (2004); *Razor v. Hyundai Motor Am*., 349 Ill. App. 3d 651, 813 N.E.2d 247 (2004) (affirmed in part, reversed in part, and remanded 222 Ill.2d 75 (2006); *Cimino v. Fleetwood*, 542 F. Supp. 2d 869, 882 (N.D. Ind. 2008).

## C.    NAMES AND ADDRESSES OF DEFENDANT'S WITNESSES WHO MAY TESTIFY AT TRIAL

1. Greg Webster, Toyota Motor Sales, U.S.A., Inc., 19001 S. Western Avenue Torrance, CA 90501;
2. Michael Zarnecki, Toyota Motor Sales, U.S.A., Inc., Lexus Central Area, 450 East Diehl Road, Naperville, Illinois 60563;
3. Randy Enochs, 459 Little Fudges Creek Road, Barboursville, WV 25504;
4. Ashley Horstman, Toyota Motor Sales, U.S.A., Inc., Lexus Central Area, 450 East Diehl Road, Naperville, Illinois 60563;
5. Dan Pfeiffer, Toyota Motor Sales, U.S.A., Inc., Lexus Central Area, 450 East Diehl Road, Naperville, Illinois 60563;
6. Jason Bingham, Toyota Motor Sales, U.S.A., Inc., Lexus Central Area, 450 East Diehl Road, Naperville, Illinois 60563;
7. Keith Ulrich, 5879 Valiant Drive, Windsor, Wisconsin, 53598 (formerly of Lexus of Brookfield);
8. Alan Kaul, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
9. James Silva, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
10. Mike Yang, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
11. Rob Kwasniewicz, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
12. Dennis Roskopf, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
13. Matt Hintz, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
14. David Goltz, Lexus of Brookfield, 19455 Janacek Court, Brookfield WI 53045;
15. Thomas Wittmayer, Lexus of Madison, 8000 Airport Rd., Middleton, WI 53562;
16. Keane Kehoe (as an adverse witness);
17. Phillip Leyden, Swanson, Martin & Bell, LLP, 330 North Wabash Avenue, Suite 3300, Chicago, Illinois (to authenticate foundation of certain photographs and video recordings, if necessary).

### D. STATEMENT OF THE BACKROUND OF DEFENDANT'S EXPERT WITNESSES

1. Greg Webster – Toyota Motor Sales, U.S.A., Inc., Technical Analysis Manager

Mr. Webster graduated from Illinois Wesleyan University in Bloomington, Illinois with a Bachelor of Arts degree in Physics. He subsequently earned a Masters of Science degree in the field of Mechanical Engineering. From 2000 to 2005, he worked for Ford Motor Company as a vehicle engineer at the Chicago assembly plant and a product development engineer at Ford's product development center in Dearborn, Michigan. Since 2005, Mr. Webster has been employed by Toyota Motor Sales, Inc. From 2005 to 2011, he was Assistant Manager for the Customer Quality Engineering Department. Since 2012, Mr. Webster has been a Technical Analysis Manager for TMS, providing technical analysis for safety and quality issues. He is also a member of the Society of Automotive Engineers ("SAE").

2. Michael Zarnecki – Toyota Motor Sales, U.S.A., Inc., Field Technical Specialist

Mr. Zarnecki graduated from Northern Illinois University in DeKalb, Illinois with a Bachelor of Science degree in Industrial Education with a major in Automotive Technology and Metal Technology. He is a Lexus Master Certified Technician and an Automotive Service Excellence ("ASE") Master Certified Technician (with a L1 Advanced Level Engine Performance Technician certification) for the past 35 years. Mr. Zarnecki is also a member of SAE. Mr. Zarnecki is currently employed for Toyota Motor Sales, USA, Inc., Lexus Division, as a Field Technical Specialist. He provides technical support and assistance to Lexus dealerships and technicians in diagnosing and resolving technical concerns for Lexus vehicles.

3. <u>Randy Enochs</u>

Mr. Enochs has 35 years of experience in the automotive industry and, during this time period, has been employed as a salesman, used car manager, new car manager, and general manager at automobile dealerships.  He is currently employed at Big Blue Auto Sales in Barboursville, West Virginia where his responsibilities include purchasing vehicles at auction, appraising vehicles, and buying and selling vehicles.  As a used car manager, he was responsible for inventory, daily appraisals of vehicle trade-ins, and forged and maintained relationships with automobile auctions.  Mr. Enochs previously received sales and management training with Ford Motor Company.  He is a member of Auto Tech Auction Access and is licensed to sell automobiles in the State of West Virginia.

## E. DEFENDANT'S LIST OF EXHIBITS TO BE OFFERED AT TRIAL

1000.  The 2009 Lexus LS Warranty and Services Guide;
1001.  The 2009 Lexus LS 460 Owner's Manual;
1002.  The 2009 Lexus Lemon Law Guide;
1003.  The 2009 Lexus LS Product Brochure;
1004.  Plaintiff's Complaint at Law;
1005.  Lexus of Madison Motor Vehicle purchase contract of August 15, 2009;
1006.  Retail Installment Contract for the subject vehicle of August 15, 2009;
1007.  Wisconsin Certificate of Title 09231T884002-9;
1008.  Wisconsin Certificate of Title Registration L113060016313;
1009.  Wisconsin Title & License Plate Application;
1010.  August 19, 2009, Wisconsin Certificate of Title;
1011.  Odometer Statement;
1012.  Bank Statement of Top Tech Automotive Check Nos. 6823, 6824, and 6825 for monthly loan payments for the 2009 Lexus LS 460L;
1013.  Monthly Invoices for Financing of Vehicle forwarded to TMS by the Plaintiff;
1014.  Monroney Window Sticker for the subject 2009 Lexus LS 460L;
1015.  Certificate Schedule 11892866;
1016.  Lexus of Brookfield Invoice No. 292825 dated September 16, 2009;
1017.  Lexus of Brookfield Invoice No. 299392 dated January 22, 2010;
1018.  Lexus of Brookfield Invoice No. 336151 dated December 19, 2011;
1019.  Lexus of Brookfield Rental Agreement dated December 19, 2011;
1020.  Lexus of Brookfield Invoice No. 336956 dated January 3, 2012;
1021.  Lexus of Brookfield Rental Agreement dated January 3, 2011;
1022.  Lexus of Brookfield Invoice No. 337092 dated January 6, 2012;
1023.  Lexus of Brookfield Vehicle Check-in Report dated January 6, 2012;
1024.  Lexus of Brookfield Rental Agreement dated January 6, 2012;
1025.  Lexus of Brookfield Invoice No. 343437 dated May 15, 2012;
1026.  Lexus of Brookfield Vehicle Check-in Report dated May 15, 2012;
1027.  Lexus of Brookfield Rental Agreement dated May 15, 2012;
1028.  Lexus of Brookfield Invoice No. 343542 dated May 17, 2012;
1029.  Lexus of Brookfield Vehicle Check-in Report dated May 17, 2012;
1030.  Lexus of Brookfield Vehicle Alignment Report dated May 17, 2012;
1031.  Lexus of Brookfield Rental Agreement dated May 16, 2012;
1032.  Lexus of Brookfield Invoice No. 343934 dated May 23, 2012;
1033.  Lexus of Brookfield Vehicle Alignment Report dated May 24, 2012;
1034.  Lexus of Brookfield Rental Agreement dated May 23, 2012;
1035.  May 23, 2012, Lexus Customer Contact Information Central Area Report;
1036.  Lexus of Brookfield Invoice No. 346009 dated June 28, 2012;
1037.  Lexus of Brookfield Invoice No. 361163 from May 15, 2013;
1038.  Lexus of Brookfield Vehicle Check-in Report dated May 15, 2013;
1039.  Lexus of Brookfield Rental Agreement dated May 15, 2013;
1040.  TMS's Service Serial Master Inquiry documents;
1041.  TMS's Claimant Claim Summary;
1042.  TMS's Claim Detail Report No. 995883;

1043.	TMS's Claim Detail Report No. 996553;
1044.	TMS's Claim Detail Report No. 995803;
1045.	TMS's Claim Detail Report No. 995832;
1046.	TMS's Claim Detail Report No. 995802;
1047.	TMS's Claim Detail Report No. 995801;
1048.	TMS's Claim Detail Report No. 995800;
1049.	TMS's Claim Detail Report No. 995799;
1050.	TMS's Claim Detail Report No. 994546;
1051.	TMS's Claim Detail Report No. 994299;
1052.	TMS's Claim Detail Report No. 978043;
1053.	TMS's Claim Detail Report No. 974599;
1054.	TMS's Claim Detail Report No. 960150;
1055.	TMS's Main Vehicle Inquiry;
1056.	TMS's Simulated Monroney Label;
1057.	TMS's Distribution Documents;
1058.	TMS's Vehicle Detail Report;
1059.	TMS's TAS Case Report of May 22, 2013;
1060.	TMS's Case Activity Report No. 1205170230;
1061.	TMS's Case Activity Report No. 1205180950;
1062.	TMS's Case Activity Report No. 1205251471;
1063.	TMS's Case Activity Report No. 1206041819;
1064.	TMS's Case Activity Report No. 1208082229;
1065.	Technical Service Bulletin L-SB-0178-09 (Brake Actuator Knock Noise);
1066.	Technical Service Bulletin L-SB-0138-11 (Air Spring Rattle Noise);
1067.	Technical Service Bulletin L-SB-021-12 (Front Suspension Knock Noise);
1068.	Records from Jon Lancaster, Inc., 8000 Airport Road, Middleton, WI 53562;
1069.	Correspondence dated May 17, 2012 from Amber Echols of Lexus to Plaintiff;
1070.	Correspondence dated May 21, 2012 from Plaintiff to Lexus;
1071.	Correspondence dated May 30, 2012 from Lexus to Plaintiff;
1072.	Correspondence dated June 6, 2012 from Lexus to Plaintiff;
1073.	Correspondence dated July 2, 2012 from Plaintiff's counsel to National Center for Dispute Settlement;
1074.	Plaintiff's July 2, 2012 Customer Claim Form;
1075.	Correspondence dated July 11, 2012 from Lena Wright of the National Center for Dispute Settlement to Plaintiff's counsel;
1076.	Correspondence dated July 11, 2012 from Lena Wright of the National Center for Dispute Settlement to TMS;
1077.	Correspondence dated July 12, 2012 from Ashley Hortsman of Lexus to Lena Wright of the National Center for Dispute Settlement;
1078.	Correspondence dated July 13, 2012 from Lena Wright of the National Center for Dispute Settlement to Plaintiff's counsel and TMS;
1079.	Correspondence dated July 13, 2012 from Lena Wright of the National Center for to Ashley Hortsman of Lexus;
1080.	Correspondence dated July 16, 2012 from Lena Wright of the National Center for to Ashley Hortsman of Lexus;

1081. Correspondence dated July 17, 2012 from Plaintiff's counsel to the National Center for Dispute Settlement to Plaintiff's counsel;
1082. Correspondence dated July 17, 2012 from Lena Wright of the National Center for Dispute Settlement to Ashley Hortsman of Lexus;
1083. Correspondence dated July 18, 2012 from Plaintiff's counsel to the National Center for Dispute Settlement to Plaintiff's counsel;
1084. Correspondence dated July 19, 2012 from Plaintiff's counsel to the National Center for Dispute Settlement to Plaintiff's counsel;
1085. Correspondence dated July 19, 2012 from Ashley Hortsman of Lexus to the National Center for Dispute Settlement to Plaintiff's counsel;
1086. Correspondence dated July 20, 2012 from Lena Wright of the National Center for Dispute Settlement to Plaintiff's counsel;
1087. Correspondence dated July 20, 2012 from Lena Wright of the National Center for Dispute Settlement to Ashley Hortsman of Lexus;
1088. Correspondence dated July 23, 2012 from Lena Wright of the National Center for Dispute Settlement to Plaintiff's counsel;
1089. Correspondence dated July 23, 2012 from Lena Wright of the National Center for Dispute Settlement to Ashley Hortsman of Lexus;
1090. Correspondence dated July 26, 2012 from Plaintiff's counsel to Lexus;
1091. Correspondence dated August 14, 2012 from Lexus to Plaintiff's counsel;
1092. Correspondence dated August 15, 2012 from Lena Wright of the National Center for Dispute Settlement to Plaintiff's counsel and TMS;
1093. Correspondence dated August 16, 2012 from Plaintiff's counsel to Lexus;
1094. Correspondence dated August 24, 2012 from Ashley Hortsman of Lexus to Plaintiff's counsel;
1095. Correspondence dated September 5, 2012 from Plaintiff's counsel to Ashley Hortsman of Lexus;
1096. Correspondence dated September 14, 2012 from Ashley Hortsman of Lexus to Plaintiff's counsel;
1097. Correspondence dated September 17, 2012 from Plaintiff's counsel to Ashley Hortsman of Lexus;
1098. Correspondence dated September 21, 2012 from Ashley Hortsman of Lexus to Plaintiff's counsel;
1099. Correspondence dated September 25, 2012 from Plaintiff's counsel to Ashley Hortsman of Lexus;
1100. N.C.D.S. Decision 3212008 of August 14, 2012;
1101. Plaintiff's Answers to Interrogatories;
1102. Plaintiff's Answers to TMS's Request to Admit;
1103. Plaintiff's Answers to TMS's Supplemental Request to Admit;
1104. Plaintiff's Response to TMS's Request for Production;
1105. August 23, 2013, Lexus Financial Services correspondence to Plaintiff;
1106. August 23, 2013, Wisconsin Department of Transportation Lien Release;
1107. August 27, 2013, Wisconsin Certificate of Title;
1108. Mr. Dentici's August 1, 2013, expert report;
1109. Mr. Dentici's Curriculum Vitae;
1110. Correspondence dated July 15, 2013, from Plaintiff's counsel to Mr. Dentici;

1111. Business Card of Top Tech Automotive;
1112. Mr. Dentici's photographs taken during his July of 2013, vehicle inspection
1113. Photograph 1 of CV Boot produced by Plaintiff (*Plaintiff Bates range No. 51*);
1114. Photograph 2 of CV Boot produced by Plaintiff (*Plaintiff Bates range No. 52*);
1115. Photograph 3 of CV Boot produced by Plaintiff (*Plaintiff Bates range No. 53*);
1116. Photograph 4 of CV Boot produced by Plaintiff (*Plaintiff Bates range No. 54*);
1117. Photograph 1 of brake caliper produced by Plaintiff (*Plaintiff Bates No. 55*);
1118. Photograph 2 of brake caliper produced by Plaintiff (*Plaintiff Bates No. 56*);
1119. Photograph 3 of brake caliper produced by Plaintiff (*Plaintiff Bates No. 57*);
1120. Photograph 4 of brake caliper produced by Plaintiff (*Plaintiff Bates No. 58*);
1121. Photograph 5 of brake caliper produced by Plaintiff (*Plaintiff Bates No. 59*);
1122. Photograph of odometer of the 2009 Lexus LS 460L at 28,277 miles;
1123. Mr. Dentici's October 18, 2013, expert report;
1124. Photograph 1 of 4 photographs taken during Mr. Dentici's October of 2013, vehicle inspection;
1125. Photograph 2 of 4 photographs taken during Mr. Dentici's October of 2013, vehicle inspection;
1126. Photograph 3 of 4 photographs taken during Mr. Dentici's October of 2013, vehicle inspection;
1127. Photograph 4 of 4 photographs taken during Mr. Dentici's October of 2013, vehicle inspection;
1128. DVD containing 1st of 4 video recordings of the subject vehicle taken during Mr. Dentici's October of 2013, vehicle inspection;
1129. DVD containing 2nd of 4 video recordings of the subject vehicle taken during Mr. Dentici's October of 2013, vehicle inspection;
1130. DVD containing 3rd of 4 video recordings of the subject vehicle taken during Mr. Dentici's October of 2013, vehicle inspection;
1131. DVD containing 4th of 4 video recordings of the subject vehicle taken during Mr. Dentici's October of 2013, vehicle inspection;
1132. Michael Zarnecki's Curriculum Vitae;
1133. Michael Zarnecki's Customer Contact Information Report from May 20, 2013;
1134. Color Photographs taken by Mr. Zarnecki in May of 2013 (Group Exhibit: 49 Photographs);
1135. Lexus of Brookfield Invoice No. 367337 from September 23, 2013;
1136. Michael Zarnecki's September of 2013, Expert Report;
1137. Greg Webster's September 30, 2013, Expert Report;
1138. Greg Webster's Curriculum Vitae;
1139. Photographs taken by Michael Zarnecki from his September of 2013, inspection (Group Exhibit – 79 photographs);
1140. Photographs taken by Greg Webster from his September of 2013, inspection (Group Exhibit – 209 photographs);
1141. DVD containing the video recording of the Plaintiff's vehicle in September of 2013;
1142. DVD containing the video recording of the road test of the Plaintiff's vehicle in September of 2013;

1143. DVD containing the video recording of the road test of an exemplar 2009 Lexus LS 460L in September of 2013;
1144. Photographs taken by Greg Webster from his September of 2013 inspection of an exemplar 2009 Lexus LS 460 (Group Exhibit – 83 photographs);
1145. Pico scope graph recording from the road test of the Plaintiff's vehicle in September of 2013;
1146. Greg Webster's Inspection Notes from his September of 2013, vehicle inspection;
1147. Alignment reading of the subject vehicle on September 24, 2013;
1148. Field Technical Report – Incident Inspection from September 24, 2013;
1149. Tire Pressure Monitor Reading from September 24, 2013;
1150. First Vehicle Diagnostic Health Check Report taken of the subject vehicle in September of 2013;
1151. Second Vehicle Diagnostic Health Check Report taken of the subject vehicle in September of 2013;
1152. Lexus of Brookfield Invoice from February 6, 2014;
1153. Alignment reading of the subject vehicle from February 6, 2014;
1154. Michael Zarnecki's March 14, 2014, Expert Report;
1155. Greg Webster's March 14, 2014, Expert Report;
1156. Greg Webster's Inspection Notes from his February 6, 2014, vehicle inspection;
1157. Photographs taken during Michael Zarnecki February 6, 2014, vehicle inspection;
1158. Photographs taken by Greg Webster from his February of 2014, inspection of the subject vehicle (Group Exhibit - 152 photographs);
1159. DVD containing the video recording of the road test of the Plaintiff's vehicle in February of 2014;
1160. DVD containing the video recording of the inspection of the Plaintiff's vehicle in February of 2014;
1161. DVD containing Mr. Zarnecki's video recordings of the inspection of exemplar Lexus LS 460Ls in January of 2014;
1162. Photographs taken by Michael Zarnecki from his inspection of exemplar Lexus LS 460Ls in January of 2014 (Group Exhibit – 19 photographs);
1163. DVD containing video recordings of Mr. Webster's and Mr. Zarnecki's inspection of other manufacturers' vehicles taken in March of 2014);
1164. Photographs taken during Mr. Zarnecki's and Mr. Webster's inspection of other Manufacturer's vehicles taken in March of 2014 (Group Exhibit – 60 photographs);
1165. Toyota Motor Corporation's Manufacturers Motor Vehicle Specifications for the 2009 Lexus LS 460;
1166. Toyota Motor Corporation's Manufacturers Motor Vehicle Specifications for the 2010 Lexus LS 460;
1167. Randy Enochs' February of 2014, Expert Report;
1168. Randy Enochs' Curriculum Vitae;
1169. Photographs taken during Randy Enochs' February of 2014, vehicle inspection (Group Exhibit – 105 photographs);
1170. DVD containing two video recordings of Mr. Enoch's road test of the Plaintiff's vehicle in February of 2014;

1171. Mr. Enoch's handwritten Inspection Notes from his February 6, 2014, vehicle inspection;

1172. Mr. Enoch's typewritten Inspection Notes from his February 6, 2014, vehicle inspection;

1173. Mr. Enoch's Salesperson and Auction Access Licenses;

1174. A 2009 Lexus LS 460L valuation guide printout;

1175. A 2009 Lexus LS 460L MMR Transaction printout;

1176. A 2009 Lexus LS 460L Black Book valuation guide printout;

1177. A 2009 Lexus LS 460L TrueTarget Appraisal printout;

1178. A 2009 Mercedes-Benz S Class valuation guide printout;

1179. A 2009 BMW 7 Series valuation guide printout;

1180. The deposition transcript of Keith Ulrich dated September 17, 2013;

1181. The deposition transcript of Keane Kehoe dated September 18, 2013;

1182. The deposition transcript of Ashley Hortsman dated October 3, 2013;

1183. The deposition transcript of Michael Zarnecki dated October 13, 2013;

1184. The deposition transcript of James Dentici dated March 7, 2014

1185. The deposition transcript of Greg Webster dated April 17, 2014;

1186. The deposition transcript of Michael Zarnecki dated May 20, 2014;

1187. Any other document used for impeachment purposes;

1188. Any other documents produced by Plaintiff and TMS exchanged during the course of discovery.

**F.  DESIGNATION OF DEPOSITIONS OR PORTIONS OF TRANSCRIPTS TO BE READ INTO RECORD OR PLAYED AT TRIAL AS SUBSTANTIVE EVIDENCE**

TMS does not anticipate that any depositions will be read into the record at this time. However, TMS reserves the right to utilize the deposition transcripts of Plaintiff and Plaintiff's Expert (James Dentici) for impeachment purposes at the time of trial.

**G.  ESTIMATE OF TIME NEEDED TO TRY THE CASE**

TMS estimates that it will take four to five days to try this case.

# H.     ADDITIONAL JURY TRIAL MATERIALS

## (i)  DEFENDANT'S PROPOSED *VOIR DIRE* EXAMINATION QUESTIONS

1.     Are you a licensed driver?
2.     Do you regularly operate motor vehicles?
3.     What brands of vehicle do you own or regularly operate?
4.     Have you ever owned or leased a Lexus or Toyota vehicle?
5.     Did you have a negative experience with your Lexus or Toyota vehicle?
6.     At the time you purchased or leased a Lexus or Toyota vehicle, were you issued a warranty?
7.     Describe your experience with your Lexus or Toyota vehicle and its warranty?
8.     Have you or anyone you know ever had had a negative experience with Toyota Motor Sales?  If so, please describe that experience.
9.     Have you or anyone you know has ever had a negative experience with a Lexus or Toyota dealership, including Lexus of Brookfield?  If so, please describe that experience.
10.    Have you ever had an unsatisfactory experience with another automobile manufacturer or dealership? If so, please describe that experience.
11.    Does everyone understand that Lexus of Brookfield is a separate company from Toyota Motor Sales?
12.    Have you ever owned any motor vehicle that was covered by a warranty?
13.    Have you ever requested warranty repairs for a vehicle or product?
14.    Can you please describe your experience dealing with warranties in general?
15.    Have you ever been employed by an automobile manufacturer or dealer?
16.    In what capacity were you employed?
17.    Do you or does anyone close to you have any experience with automotive repair or the repair of other machinery?  If so, please describe this experience.
18.    Do you have any mechanical or engineering background or training? If so, please describe it.
19.    Do you have any experience with writing or interpreting warranties?
20.    Have you ever entered into a written contract?
21.    Have you ever been accused of breaching a contract?
22.    Have you ever complained to the seller or manufacturer of a consumer product about the quality or performance of that product?
23.    Are you normally satisfied with the response of the seller or manufacturer?
24.    Do you feel that when corporations are sued, they should be held to a higher standard than an individual?
25.    What are your general feelings about corporations and their relationship to consumers?
26.    Is there anyone that will not give Toyota Motor Sales a fair trial because Mr. Kehoe is an individual and Toyota Motor Sales is a corporation?
27.    Do you feel that because a person complains about the performance of a vehicle that that vehicle necessarily exhibits the things complained of?
28.    Do you feel that it is possible for a consumer to have unreasonable expectations of a vehicle?

29. Do you expect vehicles to operate without ever needing repairs?
30. Has anyone had an experience with a vehicle or with a warranty that was so bad that you could not give Toyota Motor Sales a fair trial?
31. Even though Toyota Motor Sales has offices here in the United States, is there anyone that cannot give Toyota Motor Sales a fair trial because it has offices overseas?
32. Is there any reason why you could not give Toyota Motor Sales a fair trial?
33. Will each and every one of you promise to be fair and impartial and treat Mr. Kehoe and Toyota Motor Sales the same?
34. Can you wait until all the evidence is presented before you come to any conclusions in this trial?
35. If the facts and the law support that a verdict must be entered in favor of Toyota Motor Sales and against Mr. Kehoe, would you have any unwillingness with returning such a verdict?

**(ii) PROPOSED GENERAL INSTRUCTIONS ON SUBSTANTIVE ISSUES**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

Defendant's Instruction No. 1
Federal Civil Jury Instructions of the Seventh Circuit – 1.01: Functions of the Court and the Jury (Modified)

Given _____ Not Given _____

During this trial, I have asked a witness a question myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

Defendant's Instruction No. 2
Fed. Civ. Jury Instructions of the 7th Cir. – 1.02: No Inference from Judge's Questions

Given _____ Not Given _____

In this case one of the parties is a corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

Defendant's Instruction No. 3
Fed. Civ. Jury Instructions of the 7th Cir. – 1.03: All Litigants Equal Before the Law

Given _____ Not Given _____

The evidence consists of the testimony of the witnesses and the exhibits admitted in evidence.

Defendant's Instruction No. 4
Fed. Civ. Jury Instructions of the 7th Cir. – 1.04: Evidence (Modified)

Given _____ Not Given _____

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Defendant's Instruction No. 5
Fed. Civ. Jury Instructions of the 7th Cir. – 1.06: What is Not Evidence

Given _____ Not Given _____

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

Defendant's Instruction No. 6
Fed. Civ. Jury Instructions of the 7th Cir. – 1.07: Note-Taking

Given _____ Not Given _____

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

Defendant's Instruction No. 7
Fed. Civ. Jury Instructions of the 7th Cir. – 1.08: Consideration of All Evidence Regardless of
Who Produced

Given _____ Not Given _____

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

Defendant's Instruction No. 8
Fed. Civ. Jury Instructions of the 7th Cir. – 1.09: Limited Purposed of Evidence

Given _____ Not Given _____

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

Defendant's Instruction No. 9
Fed. Civ. Jury Instructions of the 7th Cir. – 1.11: Weighing the Evidence

Given _____ Not Given _____

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

Defendant's Instruction No. 10
Fed. Civ. Jury Instructions of the 7th Cir. – 1.12: Definition of "Direct" and "Circumstantial" Evidence

Given _____ Not Given _____

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Defendant's Instruction No. 11
Fed. Civ. Jury Instructions of the 7th Cir. – 1.13: Testimony of Witnesses (Deciding What to Believe)

Given _____ Not Given _____

You may consider statements given by a **[Party][Witness under oath]** before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement **[not under oath] [or acted in a manner]** that is inconsistent with his testimony here in court, you may consider the earlier statement **[or conduct]** only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

**[In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.]**

Defendant's Instruction No. 12
Fed. Civ. Jury Instructions of the 7th Cir. – 1.14: Prior Inconsistent Statements or Acts

Given _____ Not Given _____

It is proper for a lawyer to meet with any witness in preparation for trial.

Defendant's Instruction No. 13
Fed. Civ. Jury Instructions of the 7th Cir. – 1.16: Lawyer Interviewing Witness

Given _____ Not Given _____

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

Defendant's Instruction No. 14
Fed. Civ. Jury Instructions of the 7th Cir. – 1.18: Absence of Evidence

Given \_\_\_\_\_ Not Given \_\_\_\_\_

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Defendant's Instruction No. 15
Fed. Civ. Jury Instructions of the 7th Cir. – 1.21: Expert Witnesses

Given _____ Not Given _____

Certain [**describe demonstrative exhibit, e.g., models, diagrams, devices, sketches**] have been shown to you. Those [**short description**] are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Defendant's Instruction No. 16
Fed. Civ. Jury Instructions of the 7th Cir. – 1.24: Demonstrative Exhibits

Given _____ Not Given _____

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors. I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

Defendant's Instruction No. 17
Fed. Civ. Jury Instructions of the 7th Cir. – 2.01: Cautionary Instruction Before Recess

Given _____ Not Given _____

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

Defendant's Instruction No. 18
Fed. Civ. Jury Instructions of the 7th Cir. – 1.27: Burden of Proof

Given _____ Not Given _____

At the time of the sale of the vehicle there was in force a federal statute known as the Magnuson-Moss Warranty Act. That Act provided that a consumer who is damaged by the failure of a warrantor to comply with a written and/or implied warranty may bring suit for damages.

Defendant's Instruction No. 19
Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.01: Statutory Provisions (previously adopted by Federal District Courts in Magnuson-Moss Actions)

Given _____ Not Given _____

A written warranty is a writing provided by the supplier to a purchaser setting out the promises and obligations of the supplier.

Defendant's Instruction No. 20
Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.07 (Modified): Written Warranty – Definition (previously adopted by Federal District Courts in Magnuson-Moss Actions)

Given _____ Not Given _____

An implied warranty of merchantability is a warranty which is implied in law and generally not reduced to writing. It is an implied promise that the vehicle is fit for the ordinary purpose for which such vehicles are used.

Defendant's Instruction No. 21
Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.08: Implied Warranty – Definition

Given _____ Not Given _____

The Plaintiff claims that he sustained damages as a purchaser of a vehicle warranted by the Defendant.

The Plaintiff further claims that the Defendant violated the Magnuson-Moss Act in that

     a. the Defendant breached a written warranty given with the vehicle.

     b. the Defendant breached the implied warranty of merchantability given with the vehicle.

The Plaintiff further claims that damages resulted in whole or in part from one or more of the alleged violations of the Act.

The Defendant denies that it violated the Magnuson-Moss Act as claimed by the Plaintiff.

The Defendant further denies that any of the alleged damages resulted, in whole or in part, from any violation of the Act.

The Defendant further denies that the Plaintiff sustained damages.

Defendant's Instruction No. 22
Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.02 (Modified): Issues Made by the Pleadings

Given _____ Not Given _____

In order for Plaintiff, Keane Kehoe, to recover for a breach of written warranty claim against Defendant, Toyota Motor Sales, U.S.A., Inc., Plaintiff has the burden of proving each of the following propositions:

> First, the existence of a defect in the vehicle covered by Toyota Motor Sales' warranty; and

> Second, compliance with the terms of the warranty by Plaintiff; and

> Third, that the Plaintiff afforded Toyota Motor Sales a reasonable opportunity to repair the defect; and

> Fourth, that Toyota Motor Sales, through its authorized dealer did not repair the vehicle after being given a reasonable number of attempts or a reasonable amount of time; and

> Fifth, that Plaintiff sustained damages as a result of Toyota Motor Sales' failure to take action required by the warranty to correct the defect or malfunction or otherwise to correct the problem.

If you find from your consideration of all the evidence that each of these propositions has been proven, then your verdict should be for the Plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proven, then your verdict should be for the Defendant.

Defendant's Instruction No. 23

Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.03 (Modified): Burden of Proof – Breach of Written Warranty; 15 U.S.C. § 2301 et seq.; *Shepard v. State Auto Mut. Co.*, 463 F.3d 742, 744 (7th Cir. 2006)

Given _____ Not Given _____

In order for Plaintiff to recover for a breach of implied warranty of merchantability claim against Defendant, Plaintiff has the burden of proving each of the following propositions:

First, that the problem of which Plaintiff complains existed when it left Defendant's control.

The Plaintiff may prove this by showing:

a. the problem was due to a defect or malfunction of the vehicle; or

b. in the absence of abnormal use or reasonable secondary causes the vehicle failed to perform in the manner reasonably expected in light of its nature and intended function;

Second, that the defect made the vehicle unfit for the ordinary purpose such a vehicle is used;

Third, that the Plaintiff notified Defendant or its authorized dealer of the defect within a reasonable amount of time after discovering it;

Fourth, that Defendant or its authorized dealer did not repair the vehicle after being given a reasonable number of attempts or did not offer to refund, replace or take other remedial action within a reasonable amount of time.

Fifth, that Plaintiff sustained damages; and

Sixth, that Plaintiff's damages were proximately caused by the vehicle being unfit for the ordinary purpose for which such vehicles are used.

If you find from your consideration of all the evidence that each of these propositions has been proven, then your verdict should be for the Plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proven, then your verdict should be for the Defendant.

Defendant's Instruction No. 24
Illinois Pattern Jury Instructions (Civil) for the Magnuson-Moss Warranty Act: 185.05: Burden of Proof – Breach of Implied Warranty

Given _____ Not Given _____

If you decide for the defendant on the question of liability, then you should not consider the question of damages.

Defendant's Instruction No. 25
Fed. Civ. Jury Instructions of the 7th Cir. – 1.31: No Need to Consider Damages Instruction

Given _____ Not Given _____

If you decide for the Plaintiff on his claim for breach of warranty, you must fix the amount of money which will reasonably compensate the Plaintiff for damages naturally arising from the breach. In calculating Plaintiff's damages, you should determine that sum of money that will put the Plaintiff in as good a position as he would have been in if both Plaintiff and Defendant had performed all of their promises under the contract.

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted.

Whether any of the elements of damages has been proven by the evidence is for you to determine.

Defendant's Instruction No. 26
Illinois Pattern Jury Instructions (Civil) for Magnuson-Moss Warranty Act: 185.09, Measure of Damages – Breach of Written Warranty; Magnuson-Moss Warranty Act 15 U.S.C.A. § 2310(d)(1)(A) and §2311(b)(1)); *Mayberry v. Volkswagen of America, Inc.*, 278 Wis. 2d 39, 692 N.W. 2d 226; and W.S.A. 402.714(2)).

Given _____ Not Given _____

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court. Forms of verdict have been prepared for you.

Forms of verdict read.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

Defendant's Instruction No. 27
Fed. Civ. Jury Instructions of the 7th Cir. – 1.32: Selection of Presiding Juror; General Verdict

Given _____ Not Given _____

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

Defendant's Instruction No. 28
Fed. Civ. Jury Instructions of the 7th Cir. – 1.33: Communication with Court

Given _____ Not Given _____

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

Defendant's Instruction No. 29
Fed. Civ. Jury Instructions of the 7th Cir. – 1.34: Disagreement Among Jurors

Given _____ Not Given _____

45

**(iii)    PROPOSED VERDICT FORMS**

<u>VERDICT FORM A</u>

We, the Jury, find for the Plaintiff, Keane Kehoe, and against the Defendant, Toyota Motor Sales, U.S.A., Inc. as to the Plaintiff's Complaint alleging breach of warranty, and further find as follows:

1.    We assess damages against Toyota Motor Sales, U.S.A., Inc., for breach of warranty in the amount of:

TOTAL DAMAGES   $_____

_____
(Foreperson)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

46

<u>VERDICT FORM B</u>

      We, the Jury, find for the Defendant, Toyota Motor Sales, U.S.A., Inc., and against the Plaintiff, Keane Kehoe, as to the Plaintiff's Complaint alleging breach of warranty.


_____
(Foreperson)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**(iv.)** **PROPOSED PRELIMINARY INSTRUCTIONS**

*Introductory paragraphs*

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.

At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

One of my duties is to decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

> NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.1 (2001) and FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) (2004).

*Order of Trial*

The trial will proceed in the following manner:

First, Plaintiff's attorney may make an opening statement. Next, Defendant's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

After the opening statements, Plaintiff will call witnesses and present evidence. Then, Defendant will have an opportunity to call witnesses and present evidence. After the parties' main cases are completed, Plaintiff may be permitted to present rebuttal evidence and Defendant may be permitted to present sur-rebuttal evidence.

After the evidence has been presented, the attorneys will make closing arguments and I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

> EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.06 (2001), FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) (2004), NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.2 (2001)

_Burden of Proof – Preponderance_

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.27: Burden of Proof

_Province of Judge and Jury_

Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

> Fed. Civ. Jury Instructions of the 7th Cir. – Taken from 1.01: General: Functions of Court and Jury

_Evidence in the Case_

The evidence consists of the testimony of the witnesses and the exhibits admitted in evidence.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.04: Evidence (with revisions)

_Credibility of Witnesses_

You will have to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also have to decide what weight, if any, you give to the testimony of each witness.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.13: Testimony of Witnesses: Deciding What to Believe (1st Paragraph)

Case 2:12-cv-01091-LA   Filed 09/03/14   Page 49 of 54   Document 51

_Direct and Circumstantial Evidence_

Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. When the time comes to deliberate on your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.12: Definition of "Direct" and "Circumstantial" Evidence (With Minor Style Change in last sentence to make the instruction look forward to the trial)

_Inferences_

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.11: Weighing the Evidence

_What is Not Evidence; Evidence for Limited Purpose_

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case: the attorneys' statements, arguments, questions, and objections of the attorneys; any testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

> NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.4 (2001) and EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.02 (2001).

50

*Rulings on Objections*

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions about how you should decide this case. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been, and you should not draw any inferences or conclusions from the question itself.

> ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.7 (Civil Cases) (2000) (Preliminary Instruction modified as to style)

*Bench Conferences*

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.

We will, of course, do what we can to keep the number and length of these conferences to a minimum, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

> FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.7 (CIVIL) (2004), EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY, INSTRUCTIONS § 1.03 (2001), and ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2000).

*Note-Taking – Allowed*

Any notes you take during this trial are only aids to your memory. The notes are not evidence. If you do not take notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

When you leave the courthouse during the trial, your notes should be left in the courtroom. When you leave at night, your notes will be secured and not read by anyone. At the end of the trial, your notes will be destroyed, and no one will be allowed to read the notes before they are destroyed.

> Fed. Civ. Jury Instructions of the 7th Cir. – 1.07: Note-Taking, NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.11, EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.04 (2001).

_No Transcript Available to Jury_

Pay close attention to the testimony as it is given. At the end of the trial you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult.

> EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.04 (2001).

_Questions by Jurors Forbidden_

I do not permit jurors to ask questions of witnesses or of the lawyers. Please do not interrupt the lawyers during their examination of witnesses.

If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that this is corrected.

> 3 KEVIN F. O'MALLEY, JAY E. GRENIG &HON.WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 101.16 (5th ed. 2000).

_Judge's Questions_

During the trial, I may sometimes ask a witness questions. Do not assume that because I ask questions I hold any opinion on the matters I ask about, or on how the case should be decided.

> 3 KEVIN F. O'MALLEY, JAY E. GRENIG &HON.WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 101.30 (5th ed. 2000) and Civ. Jury Instructions of the 7th Cir. – 1.02: No Inference From Judge's Questions (modified for style).

Case 2:12-cv-01091-LA   Filed 09/03/14   Page 52 of 54   Document 51

*Jury Conduct*

All jurors must follow certain rules of conduct, and you must follow them, too.

First, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. You must not let others to discuss the case with you. If anyone tries to talk to you about the case please let me know about it immediately;

Second, you must not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, you must not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me, you must give a signed note to the bailiff to give to me; and

Fifth, you must not make up your mind about what the verdict should be until after you have gone to the jury room to decide that case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

> NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 1.9 (2001) (revised).

Respectfully submitted,

**TOYOTA MOTOR SALES, U.S.A., INC.**

By:    /s/ Ross W. Bartolotta

Bruce S. Terlep
Ross W. Bartolotta
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6900